*253 OPINION.
ARUNdell:
The petitioner returned the stock owned by the deceased in the Weingarten Bros. Realty Co. at a value of $149,190, and the stock of the East Eleventh Street Holding Co. at a value of $18,300. In each case the amount was based entirely upon the value of the assets behind the stock. The stock values determined by the respondent were found in the same manner, but on the basis of a valuation of $1,325,000 for the office building owned by the Wein- *254 bros Real Estate Co., this amount being the price for which the property was sold in 1923, instead of $1,102,773.06, the book value used by the petitioner, and a valuation of $100,000 for the three leases owned by the East Eleventh Street Holding Co. in lieu of the lesser valuation used by the petitioner. The petitioner is now claiming that the Weingarten Bros. Realty Co. stock is worth $75,000 and that the other stock is without value.
The petitioner’s valuation of about $1,100,000 for the Terminal Building is supported by the depositions of two expert witnesses, both of whom had had considerable experience in the real estate business and were acquainted with property value in the so-called Borough Hall section of Brooklyn where the building is located. E. J. Grant,, one of the two witnesses, had appraised the building for the Wein-bros Real Estate Co. on April 25, 1915, October 18, 1922, and again on February 26, 1925, as of December 31, 1919. On each occasion he valued the land at $600,000 and the building at $500,000. Both witnesses testified that real estate sales were not active in 1919 in the section of the city in which the building was located and that sales did not become active until after the first of January, 1924. E. P. Dalmasse, the other witness, testified that the favorable terms under which the property was sold made it possible for the owner to obtain the price it did.
The uncontradicted evidence of petitioner’s witnesses convince us that the fair market value of the Terminal Building at the time of decedent’s death was $1,100,000, and that the sales price of the property in 1923, almost four years later, did not represent its fair market value on the basic date.
In determining the value of the stock of the East Eleventh Street Holding Co. the respondent valued the three leases at $100,000, the amount for which the leases were sold in 1921 to Jacob Bolton, the sublessee. He endeavored to substantiate this determination by the testimony of a qualified expert witness, who expressed the opinion that the leases were worth more in 1919 than in 1921 because of the greater length of time they had to run.
We are disposed to give little or no weight to this testimony as the witness had never examined the property and based his opinion solely on certain assumptions contained in hypothetical questions which we do not believe embodied all of the facts. The petitioner’s witness qualified as an expert and testified, in answer to a hypothetical question having as its facts the pertinent provisions of the leases, the gross and net income of the corporation in 1919, and the ownership of its stock, that the leases had a value not in excess of $3,750. He also testified that market conditions for leases on property of the type covered by the agreements were much better in 1921 than in *255 1919, due to a shortage of housing in the later year. We are convinced that the leases were not worth $100,000 on November 29, 1919, and the evidence does not warrant the acceptance of the nominal value testified to by petitioner’s witness. From all the evidence we are satisfied that the book figure used by the petitioner represents the fair market value of the leases at the time of decedent’s death.
The witness presented by the petitioner to testify as to the value of the stock itself, as distinguished from the assets behind it, gave as his opinion that a block of 1,000 out of 8,000 shares of Weingarien Bros. Bealty Co. stock was worth $75 or $105 a share, depending upon whether the Terminal Building owned by Weinbros Beal Estate Co., all of the capital stock of which was held by the former company, was valued at $1,100,000 or $1,325,000. The hypothetical question used to elicit the opinion is predicated almost entirely upon the operating history of the corporation in 1919 and did not include other facts essentially necessary as a basis to form an opinion on a question of this kind. It has also been observed that the witness only increases the value of the stock $30 a share on an increase in the value of the corporation’s principal asset $225,000, or $75 a share.
The stock in both corporations was closely held and none of it appears to have been traded in. None of the corporations ever earned a large profit on their capital investment and all of them operated at a loss during several of the five years immediately preceding 1920. In 1919 the profits of Weingarten Bros. Bealty Co. were only $5,908.27; Weinbros Beal Estate Co. sustained a loss of $12,299.21 in the operation of the Terminal Building, and the East Eleventh Street Holding Co.’s profits amounted to but $229.09.
After eliminating the sinking fund account from the current liabilities of the Weingarten Bros. Bealty Co., neither party having presented any evidence as to what the account represented, and adjusting the assets of the Weinbros Beal Estate Co. to correspond with our finding of value for the Terminal Building, we find that the net worth of the former corporation on November 29, 1919, was $463,-016.16 and that the 1,000 shares of stock held by the decedent had a value of $154,338.72 on the date of his death. We are convinced that the evidence supports the value of $18,300 found by the petitioner ■for the 6,100 shares of stock the decedent held in the East Eleventh Street Holding Co. at the time of his death.

Judgment will be entered under Rule 50.