Jesse D. Otley v. Commissioner.
Otley v. Commissioner
Docket No. 33943.
United States Tax Court
T.C. Memo 1954-126; 1954 Tax Ct. Memo LEXIS 122; 13 T.C.M. (CCH) 796; T.C.M. (RIA) 54232; August 16, 1954, Filed *122 The amounts reported by the petitioner and other stockholders as the value of shares of stock when received in 1932 in the determination of a taxable capital gain upon a corporate liquidation in that year do not establish the fair market value of such shares when so received, which is the basis for the determination of loss upon a subsequent sale. The petitioner has failed to establish such value or basis by any other sufficient evidence; therefore no deductible loss upon a sale of said shares for $25 in 1946 has been established. Thomas A. Galbally, Esq., 2035 Land Title Building, Philadelphia, Pa., for the petitioner. Edward Pesin, Esq., for the respondent. BAAR
Memorandum Findings of Fact and Opinion BAAR, Judge: The respondent determined deficiencies in the income tax of the petitioner for the years 1946 and 1947 in the respective amounts of $1,149.60 and $655.51. The sole issue presented for our decision is whether the petitioner sustained a deductible loss on the sale of certain shares of the common and preferred stock of Philadelphia Memorial Park on July 12, 1946. Findings of Fact The petitioner is a resident of St. Davids, Delaware County, *123 Pennsylvania. He filed his individual income tax returns for the taxable years 1946 and 1947 with the collector of internal revenue for the first district of Pennsylvania. The petitioner was a stockholder in the John B. Kelly Corporation, which was engaged in the construction contracting business. That corporation was liquidated on November 30, 1932, and the petitioner received as a distribution in the liquidation 25 shares of the preferred stock and 34 shares of the common stock of Philadelphia Memorial Park. In his income tax return for the taxable year 1932 the petitioner reported a capital gain of $93,095.64, representing the difference between the cost of his shares in the John B. Kelly Corporation and the cash and property received by him in liquidation. Included in the proceeds thus taxed were the shares of the Philadelphia Memorial Park at $70 per share for the common and $100 per share for the preferred stock. On July 12, 1946, all of the Philadelphia Memorial Park stock received by the petitioner in the liquidation of the John B. Kelly Corporation was sold by the petitioner to Arlington W. Canizares for a total consideration of $25. On account of this sale, the petitioner *124 claimed a deduction for a capital loss in his 1946 income tax return and a deduction for a capital loss carry-over in his 1947 return. All of the stock of John B. Kelly Corporation was owned by the petitioner and John B. Kelly. During 1932 John B. Kelly was an officer of Philadelphia Memorial Park and chairman of its financial committee. Philadelphia Memorial Park was incorporated on April 28, 1930, for the purpose, then novel, of owning and operating a cemetery which did not permit the use of conventional headstones or grave markers. The petitioner knew very little concerning the affairs of Philadelphia Memorial Park and was not personally involved in its organization or management. The Philadelphia Memorial Park shares purchased by the John B. Kelly Corporation were acquired at the direction of John B. Kelly. The petitioner did not participate in the decision to buy them, except to approve the judgment of Kelly. Stock of Philadelphia Memorial Park was purchased for cash by John B. Kelly Corporation on the dates and at the prices indicated as follows: Price per
Date
Stock
Share
Cost
July 28, 1930
50 shares preferred $100
$ 5,000
Aug. 11, 1930
50 shares preferred
5,000
Total
100 shares preferred
$10,000
July 2, 1931
63 shares common
$ 80
$ 5,040
Jan. 29, 1932
71 shares common
70
4,970
Total
134 shares common
$10,010
*125 In 1932 Canizares was the secretary of R. H. Johnson Co., which was engaged in the contracting business, and was a director of Philadelphia Memorial Park and a member of its executive committee. In 1946 he was president of Philadelphia Memorial Park and was one of a group which was attempting to acquire all of its outstanding stock, in the hope of continuing the enterprise, which was still in operation. R. H. Johnson Co. purchased for cash 50 shares of preferred stock of Philadelphia Memorial Park at $100 in 1930. On July 25, 1931, this company also acquired 207 shares of preferred stock at $100 per share in payment for money owed to it. Between August 1, 1931, and April 30, 1932, R. H. Johnson Co. acquired 170 shares of common stock (of which 15 shares were sold to an unknown purchaser on December 31, 1931, for cash at $80 per share), in payment for services rendered at the rate of $80 per share, pursuant to a contract for $300,000 or more of work, at cost plus 10 per cent. As of June 30, 1932, the assets and liabilities of Philadelphia Memorial Park, as shown on its books of account, were as follows: ASSETS
Cash
$ 2,384.96
Notes receivable
1,233.24
Accounts receivable (including con-
tracts for the sale of cemetery lots
on installments, and $128,568.49
of unrealized profits therein, as
shown below)
255,182.68
Land
277,525.31
Improvements and equipment, less
reserve for depreciation
213,269.79
Donated treasury stock
44,440.00
Investments held in trust for per-
petual maintenance
20,608.82
Organization expense and other as-
sets
17,387.61
Total Assets
$832,032.41
LIABILITIES
Accounts payable
$ 86,677.24
Mortgage
139,769.00
Improvement and perpetual mainte-
nance funds
240,665.05
Other liabilities
8,848.14
Total Liabilities
$475,959.43
Capital stock outstanding: Preferred
$98,500
Common
3,419
$101,919.00
Unrealized profits (as above)
128,568.49
Surplus resulting from donations of
treasury stock
146,620.00
Accumulated deficit from operations,
adjustments and other items
(21,034.51)
Total
$832,032.41
*126 On its corporate income tax returns for the taxable years 1931 through 1935, Philadelphia Memorial Park reported the following net income and losses: Fiscal
year
ending
Net
June 30
Income
Loss
1931
$4,814.57
1932
$18,744.06
1933
42,801.21
1934
11,824.20
1935
1,434.22
The fair market value of the preferred and common stock of Philadelphia Memorial Park on November 30, 1932, can not be determined as a fact on the present record. Opinion The deficiencies in question result from the respondent's disallowance of a capital loss for the taxable year 1946 and a capital loss carry-over for the year 1947, claimed by the petitioner to have been incurred in 1946 upon the sale of 25 shares of preferred and 34 shares of common stock in Philadelphia Memorial Park. The petitioner acquired the shares in controversy on November 30, 1932, upon a distribution in the complete liquidation of John B. Kelly Corporation. Under the provisions of section 115(c) of the Internal Revenue Code amounts received by a stockholder in complete liquidation of a corporation are treated as received in full payment in exchange for his stock in such *127 corporation. The fair market value of the property thus received ordinarily becomes the basis for the determination of gain or loss upon the subsequent disposition thereof. It therefore becomes necessary for the petitioner to establish as one of the major elements of his case the fair market value of the shares of Philadelphia Memorial Park on November 30, 1932, as his basis for the determination of the alleged loss. After a careful review of the entire record, we can conclude only that the petitioner has failed to introduce any substantial evidence of any fair market value or basis, and therefore that the respondent's determination must be sustained. The petitioner first argues that "the most significant fact" appearing of record is that the stock of Philadelphia Memorial Park acquired upon the liquidation of the John B. Kelly Corporation was reported by the petitioner at a fair market value of $100 per share for the preferred and $70 per share for the common in his individual income tax return for the taxable year 1932, in accordance with the return of the corporation and in reliance upon certain appraisals, and that he paid a capital gains tax thereon accordingly. From this *128 "most significant fact" the petitioner argues that considerations of justice and fair play should preclude the respondent from questioning these values, and that the Court should give controlling weight to the statements made by the petitioner in his 1932 income tax return and by the John B. Kelly Corporation in its corporate income tax return for that year. Such considerations, however, afford us no foundation whatever for a determination of the fair market value of the shares on November 30, 1932. No judicial or administrative determination was made with respect to the petitioner's 1932 tax liability. Thus the value put upon the stock by John B. Kelly Corporation and by the petitioner in their 1932 tax returns is evidence only of the opinion of the petitioner and the officers of the corporation as to value. The value of these opinions as evidence is of course entirely dependent upon the qualifications of the petitioner and those who appraised the stock for the corporation. As to this, we know that the petitioner's opinion is worth little or nothing; as to the qualifications of those who appraised the stock for the corporation, we know nothing. As petitioner testified, he was *129 not involved in the organization and management of Philadelphia Memorial Park. He knew nothing of its finances or management. Indeed, he knew little about the corporation beyond the fact that it operated a cemetery and that he knew some of the men who had organized it. Both petitioner and John B. Kelly testified that the assets of John B. Kelly Corporation, including the shares of stock in question, were independently appraised by three appraisers. The names of the appraisers, their qualifications and the factors which they considered are not disclosed in the record. Thus, we know only that appraisals were made. In support of his argument, the petitioner relies upon Commissioner v. Robertson, (C.A. 6, 1935) 75 Fed. (2d) 540, certiorari denied 295 U.S. 763 (1935), and Robertson v. Routzahn, (C.A. 6, 1935) 75 Fed. (2d) 537. Both of these cases dealt with the tax liability of the same taxpayer. The question presented in each case was the fair market value of certain shares of the Firestone Tire & Rubber Company as of March 1, 1913. In each case the Court of Appeals for the Sixth Circuit stressed the evidentiary weight to be given to sworn statements *130 made in the taxpayer's income tax returns for the years 1923 and 1924, fixing a value lower than was claimed in the case under consideration. Moreover, as was pointed out, the taxpayer in those cases had been the treasurer of the Firestone Company from 1909 until 1922 and a director from 1908 to 1925, and could hardly claim that his own returns were made in ignorance of the controlling facts. It is therefore apparent that these cases do not sustain the position of the petitioner in this case. The petitioner also relies upon the purchases of stock in Philadelphia Memorial Park which are described in our findings of fact. While it is true that representative sales of this stock occurring on or around the date of November 30, 1932, would be the best evidence of its fair market value on that date, the transactions of which we have knowledge do not qualify as such evidence. First, nearly all of these transactions lack proximity to the crucial date. Sales occurring in 1930 and 1931 are slight evidence of fair market value in 1932. R. L. Crook, 5 B.T.A. 197 (1926); Estate of David Weingarten, 13 B.T.A. 249 (1928). The transfers of stock to R. H. Johnson Co. *131 which occurred in 1932 were made as the result of a contract whereby that company was to take common stock as payment for services to be rendered in the amount of perhaps $300,000. While we do not know the date of the contract it is apparent that it was entered into long before November 30, 1932. In addition, it must be pointed out that all of the purchases of Philadelphia Memorial Park stock upon which the petitioner relies were made by John B. Kelly Corporation and by R. H. Johnson Co., both of which were directed and controlled by men who were promoters and officers of Philadelphia Memorial Park, and who were influenced by inducements other than the value of the stock. As John B. Kelly testified, he had hoped that Philadelphia Memorial Park would build a large building and that his corporation would participate in the construction of it. The extensive services to be rendered by the R. H. Johnson Co. have been mentioned. Its secretary, Canizares, was one of the small group which continued until 1946 or later to be interested in the Memorial Park and then attempted to acquire additional stock. Many of the officers of the corporation were in businesses which might profit from dealing *132 with the Memorial Park or otherwise benefit from its success. Much of its stock was issued in payment for engineering, accounting and other services. Thus it must be considered that the judgment of the men responsible for the purchases of stock may have been colored by their hope that the highly speculative venture which they had helped to promote would succeed. For these reasons we can not regard the transactions on which the petitioner relies as significant evidence of the fair market value. The petitioner also contends that the book values of the preferred and common shares of Philadelphia Memorial Park tend to establish their fair market value, and requests us to find as a fact that such book values were $100 and $62.34, respectively, per share as of June 30, 1932. These figures were computed by the petitioner from the information given in the balance sheets of Philadelphia Memorial Park, as set forth in its Federal income tax return for the fiscal year ending June 30, 1932, as follows: Capital stock
$102,500.00
Surplus
125,004.49
Unrealized profit on installment sales
128,568.49
Total
$356,072.98
Deducted: Treasury stock, at its
book value
44,440.00
Book Net Worth
$311,632.98
Preferred stock, 985 shares at $100
per share
98,500.00
Common stock, 3,419 shares at $62.34
per share
$213,132.98
*133 Using the same figures, we have compiled and set forth in our findings of fact a statement of assets and liabilities which strongly suggests that on June 30, 1932, the preferred stock was worth less than its par value and the common stock had no fair market value whatever. This conclusion is further supported by the evidence that the corporation reported for the Pennsylvania tax on capital stock that the value of its total capital stock for the fiscal year ended June 30, 1932, was $60,000. The book value suggested by the petitioner is clearly in excess of the indicated fair market value of the stock, for many reasons: It assumes that the accounts receivable of the corporation, including the unrealized profit on installment sales, were 100 per cent collectible. Yet we know that this would be highly improbable, and there is evidence that the officers of Philadelphia Memorial Park were of the opinion that the accounts receivable were worth no more than 50 per cent of their face amount on June 30, 1932. It is further assumed that the land and improvements were worth their book value of $483,918.67, but there is in evidence an appraisal filed in support of the capital stock tax report *134 which fixes a value of not over $230,000 for this asset. The petitioner also ignores the significance of the large current losses which were being sustained at the time of valuation and the serious inadequacy of working capital. The only inference which can be drawn from the balance sheet, in the absence of any evidence concerning the relationship of book figures to actual values, is that the assets of the corporation were worth very little, if anything, in excess of the liabilities of $475,959.43 on June 30, 1932, and that it is doubtful whether the stock had any fair market value at all on that date. Since the petitioner has not established his basis for the shares in controversy, it is unnecessary for us to consider the other arguments put forth by the respondent, namely: That the sale is not entitled to recognition because not bona fide and having been made for a merely nominal consideration, and that the stock had become worthless in a prior taxable year. Decision will be entered for the respondent.